# United States Court of Appeals for the Federal Circuit

04-3162

CASSANDRA A. AUGUSTINE,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

Michael J. Kator, Kator, Parks & Weiser P.L.L.C., of Washington, DC, argued for petitioner.

Kent G. Huntington, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Kathryn A. Bleecker, Assistant Director.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

04-3162

CASSANDRA A. AUGUSTINE,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

---

DECIDED: November 15, 2005

---

Before RADER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and DYK, Circuit Judge.

DYK, Circuit Judge.

Petitioner Cassandra Augustine was successful in her appeal to the Merit Systems Protection Board ("Board"). The Board held that the Department of Veterans' Affairs ("VA") violated Augustine's right to a veterans' preference under the Veterans' Preference Act, 5 U.S.C. § 3309, by not selecting her for a competitive civil service position. As the prevailing party, Augustine moved for attorney's fees under 5 U.S.C. § 3330c(b). The Board held that Augustine could not recover fees because her attorney was not licensed to practice in the state in which the services were rendered. We vacate the Board's decision and remand for further proceedings.

## BACKGROUND

Many federal agencies, including the Board, permit both attorneys and non-attorneys to represent clients in administrative proceedings. See, e.g., 5 C.F.R. § 1201.31(b) (2004) (Merit Systems Protection Board); 37 C.F.R. § 1.31 (2004) (Patent and Trademark Office); 29 C.F.R. § 18.34 (2004) (Department of Labor); 20 C.F.R. § 410.685(b) (2004) (certain claims before the Social Security Administration). Typically, non-attorney representatives are not entitled to an award of fees. Even when the private party is represented by an attorney, under the "American Rule," the prevailing party is generally responsible for his own attorney's fees. Indep. Fed'n. of Flight Attendants v. Zipes, 491 U.S. 754, 758 (1989). However, Congress has created several exceptions to this rule, allowing prevailing parties before federal courts or agencies to recover attorney's fees.[1] The Veterans Employment Opportunities Act of 1998 ("VEOA"), Pub. L. No. 105-339, 112 Stat. 3182 (codified at 5 U.S.C. § 3330a, et seq. (2000)), is such an exception. The VEOA provides that veterans who prevail in certain employment actions "shall be awarded reasonable attorney fees, expert witness fees, and other litigation expenses." 5 U.S.C. § 3330c(b) (2000). This case presents the question as to what, if any, role state law should play in determining who is an "attorney" for purposes of section 3330c(b).

---

[1] See, e.g., 5 U.S.C. § 7701(g)(1) (2000) (providing for fees for appeals before the Board); 42 U.S.C. § 1988(b) (2000) (The Civil Rights Attorney's Fees Awards Act of 1976); 42 U.S.C. § 2000e-5(k) (2000) (Title VII of the Civil Rights Act of 1964); 28 U.S.C. § 2412(d) (2000) (Equal Access to Justice Act); 42 U.S.C. § 406(b) (2000) (Social Security Act); 12 U.S.C. § 3417(a)(4) (2000) (Right to Financial Privacy Act of 1978).

The petitioner in this case, Augustine, filed a pro se appeal with the Board, arguing that the VA violated her right to a veterans' preference under the Veterans' Preference Act by not selecting her for the position of "Veterans Service Representative." On March 14, 2000, the administrative judge ("AJ") rendered an initial decision concluding that the VA had violated the Veterans' Preference Act and ordering the VA to appoint Augustine to the Service Representative position retroactively and to compensate her for any loss of wages or benefits. The AJ also awarded liquidated damages for violations of the statute. The VA sought review by the full Board. The full Board then vacated the initial decision, and directed the parties to submit additional briefing to the full Board on various issues.

By August 13, 2001, Augustine retained an attorney, Wild Chang, to represent her. Augustine herself was a resident in California. Chang, who was also located in California, represented Augustine in the subsequent proceedings before the full Board as well as in a mediation conducted in August 2001. The VA moved to withdraw its petition for review on September 7, 2001. On September 22, 2003, the Board entered an order stating: "we DISMISS the agency's petition for review as withdrawn. And, in light of this disposition, we also VACATE the Board's Opinion and Order at 88 M.S.P.R. 407. . . . the once-vacated initial decision is now revived, entitling the appellant to all the relief ordered therein. The initial decision of the administrative judge is now final." J.A. at 34.

As the prevailing party, Augustine moved for attorney's fees and costs of $39,124.34 under the VEOA's attorney's fees provision, 5 U.S.C. § 3330c(b). In an initial decision, the AJ agreed that the petitioner was a prevailing party but denied the

fee request. Although Chang was licensed to practice law in both Massachusetts and New York, he was not licensed in California, where the services were performed. The AJ held that "although [Chang] could appear in the proceeding as a nonlawyer representative pursuant to Board regulations," he could not appear as an attorney unless California law permitted him to appear. J.A. at 9. The AJ reasoned that "[a]n attorney appearing before the Board, whether representing a private party or an agency, will be expected to conform to the applicable state rules governing attorney conduct." J.A. at 3-4. Concluding that "all services were evidently performed while counsel was in California," the AJ then determined that, as part of the rules governing attorney conduct in California, "a non-member of the California State Bar . . . is [ ] forbidden to 'practice law in California,'" and may not "recover compensation for services as an attorney at law in California . . . ." J.A. at 4.

While recognizing that the California prohibition had not applied to regulate practice in federal courts, the AJ explained that the Board was not a court. "As neither the California Legislature nor the courts have expressly created an exception" for practice before federal agencies, the AJ "decline[d] to create a new exception" here. J.A. at 8 (internal quotation marks omitted). The AJ noted that the Board did not "have its own rules as to admission and professional conduct. . . . Thus, there is no conflict between Board law and state rules; indeed, the one incorporates the other." Id. Because Augustine did not seek full Board review, the AJ's decision became the final decision of the Board pursuant to 5 C.F.R. § 1201.113. Augustine then sought review by this court under 5 U.S.C. § 7703(b)(1).

## DISCUSSION

As this appeal concerns only the Board's legal determination regarding who may be awarded fees under 5 U.S.C. § 3330c(b), we review the Board's decision without deference. Kievenaar v. Office of Pers. Mgmt., 421 F.3d 1359, 1362 (Fed. Cir. 2005). We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2000).

The Board's decision here is not entirely clear. It could be read as holding that California law controls the right to practice as an attorney before the Board and the right to fees for performing such service. Alternatively, it could be read as holding that the federal attorney's fee statute incorporates state law. We conclude that neither ground for the decision is tenable.

### I

We first address the theory that state law is controlling. Section 6125 of California Code provides that: "No person shall practice law in California unless the person is an active member of the State Bar." Cal. Bus. & Prof. Code § 6125 (2003). This "prohibition against unauthorized law practice is . . . designed to ensure that those performing legal services do so competently." Birbrower, Montalbano, Condon & Frank v. Superior Court, 949 P.2d 1, 5 (Cal. 1998).[2] Accordingly, a violation of section 6125 is considered a misdemeanor, and "[n]o one may recover compensation for services as an attorney at law in [California] unless the person was at the time the services were

[2] The AJ noted that a violation of section 6125 was also a violation of the state's rules governing attorney conduct under Rule 1-300(B) of the California Rules of Professional Conduct. Rule 1-300(B) states: "A member [of the California Bar] shall not practice law in a jurisdiction where to do so would be in violation of regulations of that profession in that jurisdiction." Cal. Prof. Conduct, Rule 1-300(B) (2005).

performed a member of The State Bar." Id. (quoting Hardy v. San Fernando Valley Chamber of Commerce, 222 P.2d 314, 317 (Cal. Ct. App. 1950)) (alterations omitted).

California courts have yet to fully articulate the scope of what constitutes "practicing law in California" under section 6125. They have made clear that section 6125 covers representation before California courts. Birbrower, 949 P.2d at 5. On the other hand, section 6125 "does not regulate practice before United States courts," id. at 6, and therefore does not restrict the receipt of attorney's fees for services related to federal court proceedings. Cowen v. Calabrese, 230 Cal. App. 2d 870, 872-73 (Cal. Ct. App. 1964). In Z.A. v. San Bruno Park School District, 165 F.3d 1273 (9th Cir. 1999), the Ninth Circuit determined that section 6125 covered practice before state agencies even when the state agencies are enforcing federal law. Id. at 1276.

Although the Ninth Circuit applied section 6125 to practice before state administrative agencies, our attention has not been directed to any instance in which section 6125 has been applied to restrict attorney practice before a federal administrative agency. To the contrary, a 1994 memorandum issued by the Office of Professional Competence, Planning & Development of the State Bar of California indicated that the bar at least does not view section 6125 as covering federal administrative proceedings:

> The State Bar takes the general position that where a non-member is permitted to practice before a federal court (district, appellate, admiralty) or a federal agency (INS, Patent Office), such individual is not engaged in the unauthorized practice of law while performing activities before such federal courts or agencies in California on behalf of clients.

J.A. at 44.

The parties vigorously dispute whether the activities of petitioner's counsel violated California law. Whether or not California law applies, it is quite clear that state law purporting to govern practice before a federal administrative agency would be invalid. It is long established that any state or local law which attempts to impede or control the federal government or its instrumentalities is deemed presumptively invalid under the Supremacy Clause. Leslie Miller, Inc. v. Arkansas, 352 U.S. 187, 189-90 (1956); Johnson v. Maryland, 254 U.S. 51, 57 (1920); McCulloch v. Maryland, 17 U.S. 316, 429-430 (1819); Mount Olivet Cemetery Ass'n. v. Salt Lake City, 164 F.3d 480, 486 (10th Cir. 1998); Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp., 642 F.2d 527, 534-35 (D.C. Cir. 1980).[3]

As a consequence, the Supreme Court and the courts of appeals have frequently invalidated state licensing requirements for federal employees and federal contractors. See Leslie Miller Inc., 352 U.S. at 190 (holding that the United States Air Force alone has the authority to determine the type of license that is required of its independent contractors); Johnson, 254 U.S. at 57 (holding that a state could not require the driver of a United States Postal truck to obtain a state driver's license before performing his duties); United States v. Virginia, 139 F.3d 984, 987-88 (4th Cir. 1998) (holding that the Virginia Criminal Justice Services Board could not require private investigators under contract with the FBI to obtain state private investigator licenses); Taylor v. United

[3] While there is no bright line rule regarding what constitutes a "federal instrumentality," the Supreme Court has looked to several factors, including: whether the entity was created by the government; whether it was established to pursue governmental objectives; whether government officials handle and control its operations; and whether the officers of the entity are appointed by the government. Lebron v. Nat'l R.R. Passenger Corp., 513 U.S. 374, 397-98 (1995) (considering these factors to find that Amtrak was an instrumentality of the United States).

States, 821 F.2d 1428, 1431-32 (9th Cir. 1987) (noting that California could not require an army hospital or its health care providers to be licensed under state law).

So too state licensing requirements which purport to regulate private individuals who appear before a federal agency are invalid. In Sperry v. Florida, 373 U.S. 379 (1963), the Florida Bar attempted to enjoin a non-attorney from performing services in the state relating to a patent prosecution occurring before the United States Patent and Trademark Office ("PTO"). Id. at 381. The Florida Bar argued that the non-attorney was engaged in the "unauthorized practice of law" because the Florida Bar had not licensed him. Id. at 382. The Supreme Court held that a "State may not enforce licensing requirements which . . . give 'the State's licensing board a virtual power of review over the federal determination' that a person or agency is qualified and entitled to perform certain functions," and found that the state's licensing requirements could not govern practice before the PTO. Id. at 385, 388 (quoting Leslie Miller, Inc., 352 U.S. at 190).

Just as the states cannot regulate practice before the PTO, they cannot regulate practice before the Merit Systems Protection Board. Allowing state control would plainly impede the conduct of federal proceedings even though the Board does not have procedures for admitting counsel to practice before it. The Board "is an independent Government agency that operates like a court." 5 C.F.R. § 1200.1 (2004). California has no authority to require that attorneys practicing before the Board obtain a state license or to regulate the award of fees for work before federal agencies. To the extent that the Board held otherwise, that decision cannot stand.

II

We turn now to the second question—whether federal law incorporates state law. This in turn requires consideration of two subsidiary questions: whether federal law incorporates state law as to the right to practice before the Board; and whether federal law incorporates state law as to who is entitled to fees.

Although a state cannot regulate the licensing requirements of attorneys before the Board, federal law may adopt or incorporate state law standards as its own. See, e.g., NLRB v. Natural Gas Util. Dist. of Hawkins County, 402 U.S. 600, 603 (1971) ("There are, of course, instances in which the application of certain federal statutes may depend on state law.") (quoting NLRB v. Randolph Elec. Membership Corp., 343 F.2d 60, 62 (4th Cir. 1965)). But incorporation "is controlled by the will of Congress. In the absence of a plain indication to the contrary . . . it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on state law." Id. (internal quotation marks omitted).

The relevant statute regarding appeals to the Board states that: "An appellant [before the Board] shall have the right . . . to be represented by an attorney or other representative." 5 U.S.C. § 7701(a)(2) (2000). The regulation states that "[a] party may choose any representative as long as that person is willing and available to serve." 5 C.F.R. § 1201.31(b) (2004). Here, neither the statute nor the regulation imposes a requirement that an attorney appearing before the Board be licensed in the state in which the services are rendered. Thus, we must assume that neither Congress nor the Board had intended to incorporate state law.

Quite apart from the statutory and regulatory silence, it seems to us clear that federal law here does not incorporate state-law rules governing the unauthorized

practice of law. Congress has addressed the role of state law most directly in connection with the application of state-law rules to government attorneys. In 1998, Congress, concerned that government attorneys should abide by state ethics standards, enacted 28 U.S.C. § 530B, which provides:

> An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State.

28 U.S.C. § 530B(a) (2000). But nothing in section 530B suggests that government attorneys must abide by state licensing requirements. To the contrary, 28 C.F.R. § 77.2 (which is referred to by section 530B(c) for the definition of "attorney for the Government") explicitly rejects the proposition that government attorneys must comply with state licensing requirements. The regulation states that the "phrase state laws and rules and local federal court rules governing attorneys . . . . does not include . . . [a] statute, rule, or regulation requiring licensure or membership in a particular state bar." 28 C.F.R. § 77.2(h) (2004). Thus, while government attorneys must abide by the ethical codes of conduct of each state in which they perform their services, they do not have to be licensed by those states to practice law.

In Collins v. Department of Justice, 94 M.S.P.R. 62 (2003), the Board held that private attorneys appearing before it will also be expected to conform to applicable state rules governing attorney conduct but did not suggest that they must abide by state licensing requirements. The issue in Collins was whether a particular attorney should be disqualified to serve as a representative under 5 C.F.R. § 1201.31(b). Although the regulation allows a party to choose "any representative as long as that person is willing

and available to serve," the regulation provides that "[t]he other party or parties may challenge the designation, however, on the ground that it involves a conflict of interest or a conflict of position." 5 C.F.R. § 1201.31(b). In Collins, Collins' designated attorney representative had previously established an attorney-client relationship with a witness opposing Collins and therefore had a potential conflict of interest. Collins, 94 M.S.P.R. at 63-64. The Board reasoned that private attorneys should follow the same state ethics rules as government attorneys, referring to section 530B. Id. at 68-69. It found that under California's ethics rules, Collins' attorney was disqualified. Id. But Collins did not suggest that private attorneys should be subject to state licensing requirements.

It would indeed adversely affect proceedings before federal administrative agencies if state licensing rules were applied, since the pool of available attorney representatives would be severely impaired. In addition to finding an attorney who is accessible and familiar with Board practice, the private party would also have to find an attorney who is licensed in the state in which services are to be rendered. In a similar situation, the Supreme Court in Sperry, while not directly addressing the incorporation issue, concluded that applying state licensing requirements to practitioners appearing before the PTO would have a "disruptive effect," given that one-quarter of the attorney practitioners before the PTO would have been disqualified because they were not licensed in the state in which they were practicing. 373 U.S. at 401. Moreover, the various state bar rules governing unauthorized practice are not uniform. See generally ABA Section of Legal Educ. and Admissions to the Bar & Nat'l Conference of Bar Examiners, Comprehensive Guide to Bar Admissions Requirements (2005). To require the federal agency and those practicing before it to determine in every case whether a

representative was authorized to perform particular services within the state as an attorney would burden both the bar and the agencies themselves. We thus conclude that the federal statute here does not incorporate state law and that an attorney licensed in any state or federal jurisdiction is authorized to practice as an attorney before the Board.

The government nonetheless argues that even if petitioner's counsel could properly practice before the Board as an attorney, his entitlement to fees is determined by state law, and that no federal interest is undermined in determining fees in accordance with state law. As with the first issue regarding the right to practice before the Board, there is nothing in the text of the fee-shifting statute to suggest incorporation of state law. Here, the fee-shifting provision of the VEOA states: "A preference eligible who prevails in an action under section 3330a or 3330b shall be awarded reasonable attorney fees, expert witness fees, and other litigation expenses." 5 U.S.C. § 3330c(b) (2000). The Board's regulation governing attorney's fees merely states that the fee application must show why the applicant is "entitled to an award under the applicable statutory standard," and must show "an established attorney-client relationship." 5 C.F.R. § 1201.203 (2004). Given the statutory and regulatory silence, the presumption here again is that federal law does not incorporate state standards. There is also no legislative history suggesting an intent to incorporate state law.

In a similar fee-shifting statute, we have given the term "attorney" its ordinary meaning. In Cook v. Brown, 68 F.3d 447 (Fed. Cir. 1995), we determined that where the Equal Access to Justice Act did not define "attorney" for fee purposes, the ordinary meaning of the term prevailed. Id. at 451 (citing Black's Law Dictionary, which defines

"attorney at law" as a "[p]erson admitted to practice law in his respective state and authorized to perform both civil and criminal legal functions for clients"). We then noted that "[t]he EAJA gives no indication that it intends 'attorney' to be defined other than as 'attorney at law,' i.e., someone formally trained and licensed in the general practice of law." Id.

We are also not aware of any suggestion in the myriad of Supreme Court cases concerning attorney's fees statutes that state law limits fee awards under federal law. In fact, it is quite clear that denying fees to attorneys authorized to practice before federal agencies would severely undermine the congressional purpose.[4]

The federal fee-shifting statutes recognize that awarding compensation to the prevailing party plays an important role in allowing clients to secure counsel in the first place.[5] The Supreme Court has, on numerous occasions, explained that the "fundamental aim of [fee-shifting] statutes is to make it possible for those who cannot pay a lawyer for his time and effort to obtain competent counsel, this by providing

[4] Where a statute's text and legislative history are silent on an issue of statutory construction, the overriding purpose of the provision is highly relevant in resolving the ambiguity. Candle Corp. of Am. v. U.S. Int'l. Trade Comm'n, 374 F.3d 1087, 1093 (Fed. Cir. 2004); Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1355 (Fed. Cir. 2003) ("When interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give it such a construction as will carry into execution the will of the Legislature.") (quoting Kokoszka v. Belford, 417 U.S. 642, 650 (1974)).

[5] Generally, the various federal fee-shifting statutes are to be interpreted consistently. Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health and Human Res., 532 U.S. 598, 603 n.4 (2001); Indep. Fed'n. of Flight Attendants, 491 U.S. at 758 n.2 (1989); Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983).

lawyers with reasonable fees to be paid by the losing defendants." Pennsylvania v. Del. Valley Citizens' Council, 483 U.S. 711, 725 (1987).[6]

It seems to us axiomatic that the denial of fees to attorneys practicing before federal agencies would discourage such representation by attorneys. To allow attorneys to practice before federal agencies, while barring them from collecting fees under the attorney's fees statute, would, as a practical matter, bar such private representation entirely in many cases and limit representation to the few attorneys willing to serve without compensation. Under the government's theory it might even be impermissible for the attorney to receive compensation out of the client's own monetary recovery. A restrictive reading of the term "attorney" in the fee-shifting statute would thus naturally limit the opportunities that veterans would have in obtaining counsel.

Under these circumstances, the purposes of the fee-shifting statute can be served only by allowing fees for representatives who are licensed as attorneys in any

---

[6] See also Kay v. Ehrler, 499 U.S. 432, 436-38 (1991) (finding that the purpose of the fee-shifting provision in 42 U.S.C. § 1988 was "to enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights"); Pennsylvania v. Del. Valley Citizens' Council, 478 U.S. 546, 565 (1986) ("[T]he aim of [fee-shifting] statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws."); Hensley, 461 U.S. at 429 ("The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances.") (internal quotation marks omitted); N.Y. Gaslight Club, Inc. v. Carey, 447 U.S. 54, 63 (1980) ("It is clear that [in the fee-shifting provision of the Civil Rights Act] Congress intended to facilitate the bringing of discrimination complaints. Permitting an attorney's fee award . . . furthers this goal, while a contrary rule would force the complainant to bear the costs . . . and thereby would inhibit the enforcement of a meritorious discrimination claim."); Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 420 (1978) (noting that Congress' primary purpose in enacting the fee-shifting provision of the Civil Rights Act was to "make it easier for a plaintiff of limited means to bring a meritorious suit"); Martin v. Hadix, 527 U.S. 343, 364 n.1 (1999) (Scalia, J., concurring in part and concurring in the judgment) ("I think it clear that the purpose of [§ 1988] was to enable the civil rights plaintiffs to offer a rate of compensation that would attract attorneys.").

state or federal jurisdiction, without regard to the state licensing requirements of the state in which services were rendered.

## CONCLUSION

For the foregoing reasons, the decision below is vacated, and this case is remanded to the Board for further consideration of Augustine's attorney's fee application. We do not decide the government's other objections to petitioner's fee application.

## VACATED and REMANDED

## COSTS

No costs.